# UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF VIRGINIA
### Alexandria Division

| | |
|---|---|
| ROBERT GLASSCOCK, individually, and as representative of a Class of Participants and Beneficiaries, on Behalf of the Serco Inc. 401(k) Retirement Plan; | Case No. |
| *Plaintiff,* | CLASS ACTION COMPLAINT FOR CLAIMS UNDER 29 U.S.C. § 1132(a)(2) |
| v. | |
| SERCO, INC.; | |
| *Defendant.* | |

NOW COMES Plaintiff Robert Glasscock, individually and as representative of a Class of Participants and Beneficiaries on Behalf of the Serco, Inc. 401(k) Retirement Plan, and asserts to the best of his knowledge, information and belief, formed after an inquiry reasonable under the circumstances, the following:

## INTRODUCTION

1.      ERISA's essential remedial purpose" is "to protect the beneficiaries of private pension plans." *Nachwalter v. Christie*, 805 F.2d 956, 962 (11th Cir. 1986). *See also Sweda v. Univ. of Pa.*, 923 F.3d 320, 327 (3d Cir. 2019) ("ERISA furthers 'the national public interest in safeguarding anticipated employee benefits' upon which individuals'

livelihoods depend.").[1] To advance that essential purpose, ERISA places fiduciary duties on persons responsible for administering pension plans that are the "highest known to law." *ITPE Pension Fund v. Hall*, 334 F.3d 1011, 1013 (11th Cir. 2003). ERISA's duty of loyalty requires a fiduciary to "discharge his duties with respect to a plan solely in the interest of the participants and beneficiaries" and "for the exclusive purpose of: (i) providing benefits to participants and their beneficiaries; and (ii) defraying reasonable expenses of administering the plan." 29 U.S.C. §1104(a)(1)(A). Further, ERISA's duty of prudence requires a fiduciary to discharge his duties "with the care, skill, prudence, and diligence under the circumstances then prevailing that a prudent man acting in a like capacity and familiar with such matters would use in the conduct of a like character and with like aims." 29 U.S.C. § 1104(a)(1)(B).

2.      Specifically, the law is settled that ERISA fiduciaries have a duty to evaluate fees and expenses when selecting investments *as well as* a continuing duty to monitor fees and expenses of selected investments and remove imprudent ones. *See Tibble v. Edison Int'l*, 135 S. Ct. 1823, 1828 (2015) ("a trustee has a continuing duty to monitor trust investments and remove imprudent ones" where plaintiff alleged defendants imprudently offered higher-priced funds when materially identical lower-priced mutual funds were available); *Braden v. Wal-Mart Stores, Inc.*, 588 F.3d 585, 595 (8th Cir. 2009) (claim that fiduciary selected higher-cost investments when identical lower-cost options were available stated claim for breach of fiduciary duty). *See also e.g.,*

---

[1] Unless indicated otherwise, cited and quoted cases are omitted.

29 U.S.C. §1104(a)(1)(A) (fiduciary duty includes "defraying reasonable expenses of administering the plan"); 29 C.F.R. § 2550.404a-1(b)(i) (ERISA fiduciary must give "appropriate consideration to those facts and circumstances" that "are relevant to the particular investment"). Indeed, a fiduciary's duty to evaluate and monitor investment fees and expenses is "'derived from the common law of trusts,'" a body of law that defines "the contours of an ERISA fiduciary's duty…" *Tibble*, 135 S. Ct. at 1828. Under trust law, a trustee is to "incur only costs that are reasonable in amount and appropriate to the investment responsibilities of the trusteeship." Restatement (Third) Of Trusts § 90(c)(3); *see also id.* § 88, cmt. a ("Implicit in a trustee's fiduciary duties is a duty to be cost-conscious."). And it is for good reason that ERISA requires fiduciaries to be cost-conscious:

> Expenses, such as management or administrative fees, can sometimes significantly reduce the value of an account in a defined-contribution plan," *Tibble,* 135 S. Ct. at 1826, by decreasing its immediate value, and by depriving the participant of the prospective value of funds that would have continued to grow if not taken out in fees.

*Sweda v. Univ. of Pa.*, 923 F.3d 320, 328 (3d Cir. 2019).

**3.**     Defendant Serco, Inc. is an ERISA fiduciary as it exercises discretionary authority or discretionary control over the 401(k) defined contribution pension plan – known as the Serco, Inc. 401(k) Retirement Plan (the "Plan") - that it sponsors and provides to its employees**.**

**4.**     For at least 21 of the 30 mutual funds share classes available within the Plan, the same issuer offered a different share class from that selected by the Plan that charged lower fees, and consistently achieved higher returns; the Plan, however,

inexplicably failed to select these lower fee-charging and better-return producing share classes. As well, the administrative fees charged to Plan participants were consistently greater than the fees of more than 90 percent of comparable 401(k) plans, when fees are calculated as cost per participant or when fees are calculated as a percent of total assets.

5.      These investment options and unreasonable fees cannot be justified. Their presence confirms more than simply sloppy business practice; their presence is the result of a breach of the fiduciary duties owed by Serco, Inc. to Plan participants and beneficiaries.  Prudent fiduciaries of 401(k) plans continuously monitor administrative fees against applicable benchmarks and peer groups to identify unreasonable and unjustifiable fees. To remedy, Plaintiff brings this action on behalf of the Plan under 29 U.S.C. § 1132(a)(2) to enforce Serco, Inc.'s liability under 29 U.S.C. § 1109(a) to make good to the Plan all losses resulting from Serco, Inc.'s breaches of fiduciary duty.

## JURISDICTION AND VENUE

6.      This Court has jurisdiction in this ERISA matter via 28 U.S.C. § 1331.

7.      Venue is appropriate in this district because the Defendant and Plaintiff may be found in this judicial district within the meaning of 29 U.S.C. § 1132(e)(2).

8.      In conformity with 29 U.S.C. §1132(h), Plaintiff will serve the original Complaint by certified mail on the Secretary of Labor and the Secretary of the Treasury.

## PARTIES

9.     Plaintiff Robert Glasscock lives in and is a Poquoson, Virginia, and during the Class period, was a participant in the Plan under 29 U.S.C. § 1002(7).

10.     The named Plaintiff and all participants in the Plan suffered financial harm as a result of the imprudent or unreasonable investment and fee options in the Plan. Serco's selection and retention of these options resulted in higher administrative fees than the Plan and its participants and beneficiaries should have paid, as well as poorer net investment performance, had Serco satisfied its fiduciary obligations. All participants and the Plan continue to be harmed by the ongoing inclusion of these investment options.

11.     Serco, Inc. ("Serco") is a company with its principal headquarters located at 12930 Worldgate Drive, Suite 600, Herndon, Virginia. Serco is a citizen of the state of Virginia. In this Complaint, "Serco" refers to the named defendant and all parent, subsidiary, related, predecessor, and successor entities to which these allegations pertain. Serco is the Plan sponsor and Plan administrator of the Serco Inc. 401(k) Retirement Plan.

12.     Serco is a fiduciary with ultimate authority and responsibility for the control, management, and administration of the Plan in accord with 29 U.S.C. § 1102(a). Serco has exclusive responsibility and complete discretionary authority to control the operation, management, and administration of the Plan, with all powers necessary to properly carry out such responsibilities.

13.     The Plan is a "defined contribution" pension plan under 29 U.S.C. §

1102(2)(A) and 1002(34), meaning that Serco's contribution to the payment of Plan costs

is guaranteed but the pension benefits are not.

14.     The Plan is established and maintained under a written document in

accord with 29 U.S.C. § 1102(a)(1). The Plan provides for retirement income for eligible

Serco employees and their beneficiaries.

## ERISA's FIDUCIARY STANDARDS

15.     ERISA imposes strict fiduciary standards of duty and loyalty and

prudence on Serco as a Plan fiduciary. 29 U.S.C. § 1104(a)(1) provides in relevant part:

> [A] fiduciary shall discharge his duties with respect to a plan solely
> in the interest of the participants and beneficiaries and –
> (A) for the exclusive purpose of:
>       (i) providing benefits to participants and their beneficiaries;
>       and
>       (ii) defraying reasonable expenses of administering the plan;
> [and]
> (B) with the care, skill, prudence, and diligence under the
> circumstances then prevailing that a prudent man acting in a like
> capacity and familiar with such matters would use in the conduct
> of an enterprise of like character and with like aims.

16.     With certain exceptions not relevant here, 29 U.S.C. § 1103(c)(1) provides

in relevant part:

> the assets of a plan shall never inure to the benefit of any employer
> and shall be held for the exclusive purposes of providing benefits
> to participants in the plan and their beneficiaries and defraying
> reasonable expenses of administering the plan.

17.     29 U.S.C. § 1109 provides in relevant part:

> Any person who is a fiduciary with respect to a plan who breaches
> any of the responsibilities, obligations, or duties imposed upon

fiduciaries by this subchapter shall be personally liable to make good to such plan any losses to the plan resulting from each such breach, and to restore to such plan any profits of such fiduciary which have been made through use of assets of the plan by the fiduciary, and shall be subject to such other equitable or remedial relief as the court may deem appropriate, including removal of such fiduciary.

18.     Under ERISA, fiduciaries that exercise any authority or control over plan assets, including the selection of plan investments and service providers, must act prudently and for the exclusive benefit of participants in the plan, and not for the benefit of third parties including service providers to the plan such as recordkeepers and those who provide investment products. Fiduciaries must ensure that the amount of fees paid to those service providers is no more than reasonable. DOL Adv. Op. 97-15A; DOL Adv. Op. 97-16A; *see also* 29 U.S.C. §1103(c)(1) (plan assets "shall be held for the exclusive purposes of providing benefits to participants in the plan and their beneficiaries and defraying reasonable expenses of administering the plan").

19.     "[T]he duty to conduct an independent investigation into the merits of a particular investment" is "the most basic of ERISA's investment fiduciary duties." *In re Unisys Savings Plan Litig.,* 74 F.3d 420, 435 (3d Cir. 1996); *Katsaros v. Cody*, 744 F.2d 270, 279 (2nd Cir. 1984) (fiduciaries must use "the appropriate methods to investigate the merits" of plan investments). Fiduciaries must "initially determine, and continue to monitor, the prudence of each investment option available to plan participants." *DiFelice v. U.S. Airways, Inc.*, 497 F.3d 410, 423 (4th Cir. 2007); (emphasis original); *see also* 29 C.F.R. § 2550.404a-1; DOL Adv. Opinion 98-04A; DOL Adv. Opinion 88-16A. Thus, a defined contribution plan fiduciary cannot "insulate itself from liability by the simple

expedient of including a very large number of investment alternatives in its portfolio and then shifting to the participants the responsibility for choosing among them." *Hecker v. Deere & Co.*, 569 F.3d 708, 711 (7th Cir. 2009). Fiduciaries have "a continuing duty to monitor investments and remove imprudent ones[.]" *Tibble v. Edison Int'l*, 135 S. Ct. 1823, 1828-29 (2015).

20.     "Congress intended the term 'fiduciary' to be construed broadly." *Patten v. N. Trust Co.*, 703 F.Supp.2d 799, 808 (N.D. Ill. 2010). "Although Plan documents may expressly name fiduciaries for certain purposes, a person may also be considered a 'functional fiduciary' if he falls within ERISA's definition of the term. *Id.*, citing, *Plumb v. Fluid Pump Serv., Inc.*, 124 F.3d 849, 855 (7th Cir. 1997). Under ERISA,

> a person is a fiduciary with respect to a plan to the extent (i) he exercises any discretionary authority or discretionary control respecting management of such plan or exercises any authority or control respecting management or disposition of its assets, (ii) he renders investment advice for a fee or other compensation, direct or indirect, with respect to any moneys or other property of such plan, or has any authority or responsibility to do so, or (iii) he has any discretionary authority or discretionary responsibility in the administration of such plan. 29 U.S.C. §1002(21)(A).

The determination of a defendant's fiduciary status is a fact intensive one, making it premature for disposition at the Rule 12(b)(6) dismissal stage. *Patten,* 703 F.Supp.2d at 808-09.

21.     29 U.S.C. § 1132(a)(2) authorizes plan participants to bring a civil action for appropriate relief under 29 U.S.C. § 1109.

**THE PLAN**

**22.**     At least since 2013, the Serco Plan had more than 10,000 participants and

assets exceeding $250 million. At the end of 2018, the Plan had 9,757 participants and

$335,077,840 in assets. The Serco Plan offered about 30 different investment choices to

its participants.

**23.**     At all relevant times, the Serco Plan's fees were excessive when compared

with other comparable 401k plans offered by other sponsors that had similar numbers

of plan participants, and similar amounts of money under management.  The excessive

fees led to lower net returns than participants in comparable 401k plans enjoyed.

**24.**     There are commercially available programs commonly used by financial

advisors and plan fiduciaries to analyze plans' performance, comparative costs and

other key indicators.

**25.**      The commercially available programs require validated information

because financial information submitted to the federal government is often incomplete

or contains errors. The program used for the analysis below contains validated financial

information from more than 55,000 financial plans of all types. The benchmarking

analysis is of the type employed by fiduciaries and financial advisors to determine the

productivity and efficiency of financial programs and is appropriately used here.

**26.**     A benchmarking analysis of the type often employed by fiduciaries and

financial advisors shows that the administrative fees charged to Plan participants is

greater than over 90 percent of its comparator fees when fees are calculated as cost per

participant, or as a percent of total assets.  In 2017, the Plan's expenses amounted to

.81% of assets under management, or $236.64 per participant.  The Plan's expenses are nearly double those of the mean among 26 comparator plans with more than 10,000 participants of $128.48 per participant. Similarly, among a per group of 22 Plans with an asset range between $250 million and $500 million, the mean expenses were .41% of assets under management, which again compared unfavorably with the Plan's fees representing .81% of assets. Comparisons in prior year show similar variances between the Serco Plan and comparator groups.

27.     These excessive fees cannot be justified.  An examination of the investment options the Plan fiduciaries chose, and available alternatives they either did not consider or did not choose, provides telling examples of why they breached their fiduciary duties.

28.     The Plan Fees that follow are expressed as a percentage of assets under management, or "expense ratio." For example, if the mutual fund share class deducts 1% of fund assets each year in fees, the fund's expense ratio would be 1%, or 100 basis points (or bps). (One basis point is equal to 1/100th of one percent (or 0.01%). The fees deducted from a mutual fund's assets reduce the value of the shares owned by fund investors.  As of December 31, 2018, the Plan offered participants share classes from 30 investment selections in which they could invest.  The issuers of 21 of these investments offered different share classes that charged lower fees and had materially better rates of return. The holders of different share classes held the same investments and were subject to the same restrictions concerning deposits and withdrawals. The only difference between share classes was that the lower-cost share classes were available

10

only to Plans that had larger investments – but in all cases, Serco's Plan, with more than

$250 million in assets, was large enough to qualify for the lower cost share class.  For

example, the T. Rowe Price Class Share Class I have been open to Plans with aggregate

assets greater than $1 million since they were created in 2015, a threshold easily met by

the Serco Plan.   The Plan could have, but did not, offer the lower cost share classes to

participants.

29.     Data regarding fees and performance in the charts that follow are taken

from Morningstar.com as of December 12, 2019.

**2018**

| Plan Fund | Serco's Plan Fee | Identical lower-cost or share classes | Identical lower-cost share class fee | Serco's Plan's Excessive Fees (%) |
|---|---|---|---|---|
| T. Rowe Price Target 2005 (TRARX) | 54 bps | T. Rowe Price I 2005 I (TRPFX) | 41 bps | **34%** |
|  |  | T. Rowe Price Target 2005 (TFRRX) | 41 bps | **34%** |
| T. Rowe Price Target 2010 (TRROX) | 54 bps | T. Rowe Price I 2010 I (TRPAX) | 40 bps | **35%** |
|  |  | T. Rowe Price Target 2010 I (TORFX) | 39 bps | **38%** |
| T. Rowe Price Target 2015 (TRRTX) | 56 bps | T. Rowe Price I 2015 I (TRFGX) | 43 bps | **30%** |
|  |  | T. Rowe Price Target 2015 I (TTRTX) | 42 bps | **25%** |
| T. Rowe Price Target 2020 (TRRUX) | 58 bps | T. Rowe Price I 2020 I (TRBRX) | 46 bps | **26%** |
|  |  | T. Rowe Price Target 2020 I (TTURX) | 44 bps | **32%** |

| | | | | |
|---|---|---|---|---|
| T. Rowe Price Target 2025 (TRRVX) | 61 bps | T. Rowe Price I 2025 I (TRPHX) | 50 bps | **22%** |
| | | T. Rowe Price Target 2025 I (TRVVX) | 47 bps | **30%** |
| T. Rowe Price Target 2030 (TRRWX) | 64 bps | T. Rowe Price I 2030 I (TRPCX) | 53 bps | **21%** |
| | | T. Rowe Price Target 2030 I (TWRRX) | 50 bps | **28%** |
| T. Rowe Price Target 2035 (RPGRX) | 67 bps | T. Rowe Price I 2035 I (TRPJX) | 53 bps | **26%** |
| | | T. Rowe Price Target 2035 I (TPGPX) | 53 bps | **26%** |
| T. Rowe Price Target 2040 (TRHRX) | 70 bps | T. Rowe Price I 2040 I (TRPDX) | 58 bps | **21%** |
| | | T. Rowe Price Target 2040 I (TRXRX) | 56 bps | **25%** |
| T. Rowe Price Target 2045 (RPTFX) | 71 bps | T. Rowe Price I 2045 I (TRPKX) | 59 bps | **20%** |
| | | T. Rowe Price Target 2045 I (TRFWX) | 57 bps | **25%** |
| T. Rowe Price Target 2050 (TRFOX) | 72 bps | T. Rowe Price I 2050 I (TRPMX) | 59 bps | **22%** |
| | | T. Rowe Price Target 2050 I (TOORX) | 58 bps | **24%** |
| T. Rowe Price Target 2055 (TRFFX) | 72 bps | T. Rowe Price I 2055 I (TRPNX) | 59 bps | **22%** |
| | | T. Rowe Price Target 2055 I (TRPPX) | 58 bps | **24%** |
| T. Rowe Price Target 2060 (TRTFX) | 73 bps | T. Rowe Price I 2060 I (TRPLX) | 59 bps | **24%** |
| | | T. Rowe Price Target 2060 I (TTOIX) | 59 bps | **24%** |

| MFS Value R3 (MEIHX) | 83 bps | MFS Value R6 (MEIKX) | 48 bps | **73%** |
|---|---|---|---|---|
| | | MFS Value I (MEIIX) | 58 bps | **43%** |
| MFS Mid Cap Value I (MCVIX) | 83 bps | MFS Mid Cap Value R6 (MVCKX) | 69 bps | **23%** |
| American Funds Capital World Gr&Inc. R4 (RWIEX) | 79 bps | American Funds Capital World Gr&Inc. R6 (RGGGX) | 46 bps | **72%** |
| | | American Funds Capital World Gr&Inc. R5 (RWIFX) | 49 bps | **61%** |
| JHancock Alternative Asset Allc R4 (JAASX) | 155 bps | JHancock Alternative Asset Allc. I (JAAIX) | 140 bps | **11%** |
| | | JHancock Alternative Asset Allc. R6 (JAARX) | 130 bps | **19%** |
| Metropolitan West Total Return Bond I (MWTIX) | 44 bps | Metropolitan West Total Return Bond Plan (MWTSX) | 37 bps | **19%** |
| BlackRock High Yield Bond Instl. (BHYIX) | 61 bps | BlackRock High Yield Bond K (BRHYX) | 50 bps | **22%** |
| Templeton Global Bond Adv (TGBAX) | 69 bps | Templeton Global Bond R6 (FBNRX) | 57 bps | **21%** |
| BlackRock Strategic Income Opps Instl. (BSIIX) | 82 bps | BlackRock Strategic Income Opps. K (BSIKX) | 74 bps | **11%** |

30.     The lower cost share classes offered approximately the same savings in earlier years as well.  In all cases, the lower-cost shares had higher 3-year rates of return than the higher-priced shares that Serco offered to Plan participants:

**2018:**

| Plan Mutual Fund Share Class | Serco's 3 Year Return | Identical lower-cost mutual fund 3 year return | 3 Year Return |
|---|---|---|---|
| T. Rowe Price Target 2005 (TRARX) | 6.37% | T. Rowe Price I 2005 I (TRPFX) | 6.77% |
| | | T. Rowe Price Target 2005 I (TFRRX) | 6.49% |
| T. Rowe Price Target 2010 (TRROX) | 6.53% | T. Rowe Price I 2010 I (TRPAX) | 7.24% |
| | | T. Rowe Price Target 2010 I (TORFX) | 6.64% |
| T. Rowe Price Target 2015 (TRRTX) | 7.33% | T. Rowe Price I 2015 I (TRFGX) | 8.76% |
| | | T. Rowe Price Target 2015 I (TTRTX) | 7.44% |
| T. Rowe Price Target 2020 (TRRUX) | 7.94% | T. Rowe Price I 2020 I (TRBRX) | 9.47% |
| | | T. Rowe Price Target 2020 I (TTURX) | 8.10% |
| T. Rowe Price Target 2025 (TRRVX) | 7.94% | T. Rowe Price I 2025 I (TRPHX) | 10.07% |
| | | T. Rowe Price Target 2025 I (TRVVX) | 8.10% |
| T. Rowe Price Target 2030 (TRRWX) | 8.64% | T. Rowe Price I 2030 I (TRPCX) | 10.07% |
| | | T. Rowe Price Target 2030 I (TWRRX) | 8.82% |
| T. Rowe Price Target 2035 (RPGRX) | 9.30% | T. Rowe Price I 2035 I (TRPJX) | 10.56% |
| | | T. Rowe Price Target 2035 I (TPGPX) | 9.44% |

14

| | | | |
|---|---|---|---|
| T. Rowe Price Target 2040 (TRHRX) | 9.83% | T. Rowe Price I 2040 I (TRPDX) | 10.93% |
| | | T. Rowe Price Target 2040 I (TRXRX) | 10.00% |
| T. Rowe Price Target 2045 (RPTFX) | 10.21% | T. Rowe Price I 2045 I (TRPKX) | 11.09% |
| | | T. Rowe Price Target 2045 I (TRFWX) | 10.38% |
| T. Rowe Price Target 2050 (TRFOX) | 10.93% | T. Rowe Price I 2050 I (TRPMX) | 11.48% |
| | | T. Rowe Price Target 2050 I (TOORX) | 11.05% |
| T. Rowe Price Target 2055 (TRFFX) | 11.19% | T. Rowe Price I 2055 I (TRPNX) | 11.48% |
| | | T. Rowe Price Target 2055 I (TRPPX) | 11.34% |
| T. Rowe Price Target 2060 (TRTFX) | 11.26% | T. Rowe Price I 2060 I (TRPLX) | 11.51% |
| | | T. Rowe Price Target 2060 I (TTOIX) | 11.42% |
| MFS Value R3 (MEIHX) | 10.16% | MFS Value R6 (MEIKX) | 10.52% |
| | | MFS Value I (MEEIX) | 9.70% |
| MFS Mid Cap Value I (MCVIX) | % | MFS Mid Cap Value R6 (MVCKX) | 6.75% |
| American Funds Capital World Gr&Inc. R4 (RWIEX) | 10.78% | American Funds Capital World Gr&Inc. R-6 (RGGGX) | 13.61% |
| | | American Funds Capital World Gr&Inc. R5 (RWIFX) | 11.11% |
| JHancock Alternative Asset Allc R4 (JAASX) | 3.45% | JHancock Alternative Asset Allc. I (JAAIX) | 3.61% |
| | | JHancock Alternative Asset Allc. R6 (JAARX) | 3.73% |
| Metropolitan West Total Return Bond I (MWTIX) | 4.21% | Metropolitan West Total Return Bond Plan (MWTSX) | 4.29% |
| Black Rock High Yield | 6.43% | BlackRock High Yield Bond K (BRHYX) | 6.54% |

| | | | |
|---|---|---|---|
| Bond Instl. (BHYIX) | | | |
| Templeton Global Bond Adv (TGBAX) | 1.44% | Templeton Global Bond R6 (FBNRX) | 1.58% |
| BlackRock Strategic Income Opps Instl. (BSIIX) | 3.76% | BlackRock Strategic Income Opps. K (BSIKX) | 3.88% |

Similar performance differential occurred in earlier years.

**31.**    The following compares individual plan return with less expensive plans:

**2018**

| Plan Mutual Fund | 5 Year Return | Identical lower-cost mutual fund | 5 Year Return |
|---|---|---|---|
| Voya Large Cap Growth Port I (IEOHX) | 17.93% | Voya Large-Cap Growth I (PLCIX) | 17.96% |
| Fidelity Extended Market Index (FSMAX) | 10.01% | Fidelity Mid Cap Index (FSMDX) | 10.89% |
| T. Rowe Price Mid-Cap Growth I (RPTIX) | 15.98% | T. Rowe Price Instl. Mid-Cap Equity Growth (PMEGX) | 16.54% |
| Voya SmallCap Opportunities Port I (IVSOX) | 6.41% | Vanguard Explorer Fund Admiral Shares (VEXRX) | 15.12% |
| American Funds Europacific Growth R6 (RERGX) | 11.20% | Vanguard International Growth Fund Investor Shares (VWIGX) | 16.66% |

32.     Plaintiff had no knowledge of Defendant's process for selecting investments and monitoring them to ensure they remained prudent.  Plaintiff also had no knowledge of how the fees charged to and paid by Serco Plan participants compared to any other funds. Nor did Plaintiff know about the availability of lower-cost and better-performing (and other essentially identical) investment options that Serco did not offer because Serco provided no comparative information to allow Plaintiff to evaluate and compare Serco's investment options.

33.     By selecting and retaining the Plan's unreasonably expensive cost investments while failing to adequately investigate the use of lower cost share classes, offered by the same investment companies, or superior, lower-cost mutual funds from other fund companies that were readily available to the Plan, Serco caused Plan participants to lose millions of dollars of their retirement savings through unreasonable fees and poorly performing investments.

## THE OVERCHARGES BREACHED
## DEFENDANT'S FIDUCIARY OBLIGATIONS TO THE PLAN

34.     The administrative fees of the investment offerings were paid for by the Plan participants. Serco, as fiduciary, was responsible for ensuring that these administrative fees were reasonable.

35.     A plan's fiduciaries have control over defined contribution plan expenses. The fiduciaries have exclusive control over the menu of investment options to which participants may direct the assets in their accounts. Those selections each have their

own fees, which are deducted from the returns that participants receive on their investments.

**36.**     At retirement, employees' benefits are limited to the value of their own individual investment accounts, which is determined by the market performance of employee and employer contributions, less expenses. Accordingly, unreasonable fees can impair the value of a participant's account. Over time, even small differences in fees and performance can result in large differences in the amount of savings available at retirement.

**37.**     Prudent fiduciaries exercising control over administration of a plan and the selection and monitoring of designated investment alternatives will take steps to minimize plan expenses by hiring low-cost service providers and by curating a menu of low-cost investment options. *See,* Restatement (Third) of Trusts § 90 cmt. b ("[C]ost-conscious management is fundamental to prudence in the investment function. . . .").

**38.**     In fact, the duty of prudence imposed under 29 U.S.C. § 1104(a)(1)(B) is a codification of the common law prudent investor rule found in trust law.

**39.**     Given the significant variation in total plan fees attributable to plan size, the reasonableness of administrative expenses and investment management expenses should be determined by comparison to other similarly-sized plans. *See,* 29 U.S.C. § 1104(a)(1)(B) (requiring ERISA fiduciaries to discharge their duties in the manner "that a prudent man acting in a like capacity and familiar with such matters would use in the conduct of an enterprise of a like character").

40.     A fiduciary must initially determine, and continue to monitor, the prudence of each investment option available to plan participants. A plan fiduciary cannot assume that an investment that began as a prudent one will remain so, particularly when the original circumstances change or the investment reveals itself to be deficient. An ERISA fiduciary's investment decisions also must account for changed circumstances and a trustee who simply ignores changed circumstances that have increased the risk of loss to the trust's beneficiaries is imprudent.

41.     As illustrated above, the Serco Plan's administrative fees could in many cases be significantly reduced simply by electing a different share class offered by the same issuer, or  substantially identical fund from a different issuer, and are consistently well above the 90th percentile among its comparator peers, regardless whether the comparison is based on cost per participant or percentage of assets.

42.     Prudent fiduciaries of large defined contribution plans must conduct an analysis to determine whether investments will outperform their benchmark net of fees. Prudent fiduciaries then make a reasoned decision as to whether it is in participants' best interest to offer specific funds or share classes for the particular investment style and asset class.

43.     Prudent fiduciaries of defined contribution plans continuously monitor the investment performance of plan options against applicable benchmarks and peer groups to identify underperforming investments. Based on this process, prudent fiduciaries replace those imprudent investments with better-performing and reasonably priced options.

19

44.     Serco is not a prudent fiduciary of the Plan because it did not make a
reasoned decision to offer specific funds or share classes to the Plan participants as
described herein.

45.     Serco is not a prudent fiduciary because it failed to continuously monitor
the investment performance of its plan options against applicable benchmarks and peer
groups, and it failed to identify and replace underperforming investments with better-
performing and reasonably priced options.

## CLASS ACTION ALLEGATIONS

46.     29 U.S.C. § 1132(a)(2) authorizes any participant or beneficiary of the Plan
to bring an action individually on behalf of the Plan to enforce a breaching fiduciary's
liability to the Plan under 29 U.S.C. § 1109(a).

47.     In acting in this representative capacity, Plaintiff seeks to certify this
action as a class action on behalf of all participants and beneficiaries of the Plan.
Plaintiff seeks to certify, and to be appointed as representatives of, the following Class:

> All participants and beneficiaries of the Serco Inc. 401(k) Retirement Plan
> beginning six years before the commencement of this action and running
> through the date of judgment, excluding the Defendant or any
> participant/beneficiary who is a fiduciary to the Plan.

48.     The Class includes more than **9,757** members and is so large that joinder of
all its members is impracticable, pursuant to Federal Rule of Civil Procedure 23(a)(1).

49.     There are questions of law and fact common to this Class pursuant to
Federal Rule of Civil Procedure 23(a)(2), because Serco owed fiduciary duties to the
Plan and took the actions and omissions alleged as the Plan and not as to any individual

participant. Common questions of law and fact include but are not limited to the following:

- Who are fiduciaries liable for the remedies provided by 29 U.S.C. § 1109(a);

- Whether the fiduciaries of the Plan breached their fiduciary duties to the Plan;

- What are the losses to the Plan resulting from each breach of fiduciary duty; and

- What Plan-wide equitable and other relief the Court should impose in light of Serco's breach of duty.

50.     Plaintiff's claims are typical of the claims of the Class pursuant to Federal Rule of Civil Procedure 23(a)(3), because Plaintiff was a participant during the time period at issue and all participants in the Plan were harmed by Serco's misconduct.

51.     Plaintiff will adequately represent the Class pursuant to Federal Rule of Civil Procedure 23(a)(4), because they are participants in the Plan during the Class period, have no interest that conflicts with the Class, are committed to the vigorous representation of the Class, and have engaged experienced and competent lawyers to represent the Class.

52.     Certification is appropriate under Federal Rule of Civil Procedure 23(b)(1), because prosecution of separate actions for these breaches of fiduciary duties by individual participants and beneficiaries would create the risk of (1) inconsistent or varying adjudications that would establish incompatible standards of conduct for Defendant concerning its discharge of fiduciary duties to the Plan and personal liability to the Plan under 29 U.S.C. § 1109(a), and (2) adjudications by individual participants

and beneficiaries regarding these breaches of fiduciary duties and remedies for the Plan would, as a practical matter, be dispositive of the interests of the participants and beneficiaries who are not parties to the adjudication, or would substantially impair those participants' and beneficiaries' ability to protect their interests.

53.     Certification is also appropriate under Federal Rule of Civil Procedure 23(b)(2) because Serco has acted or refused to act on grounds that apply generally to the Class, so that final injunctive relief or corresponding declaratory relief is appropriate respecting the class as a whole.

54.     Plaintiff's attorneys are experienced in complex commercial and class litigation and will adequately represent the Class.

55.     The claims brought by the Plaintiff arise from fiduciary breaches as to the Plans in its entirety and do not involve mismanagement of individual accounts. The claims asserted on behalf of the Plans in this case fall outside the scope of any exhaustion language in individual participants' plans.  Exhaustion is intended to serve as an administrative procedure for participants and beneficiaries whose claims have been denied and not where a participant or beneficiary brings suit on behalf of a plan for breaches of fiduciary duty.

56.     Under ERISA, an individual "participant" or "beneficiary" are distinct from an ERISA plan. A participant's obligation – such as a requirement to exhaust administrative remedies – does not, by itself, bind the plan.

57.     Moreover, any administrative appeal would be futile because the entity hearing the appeal (the Plan Administrator) is the same Plan Administrator that made

the decisions that are at issue in this lawsuit. So too, policy supporting exhaustion of administrative remedies in certain circumstances – that the Court should review and where appropriate defer to a plan administrator's decision – doesn't exist here because courts will not defer to plan administrator's legal analysis and interpretation.

## LEGAL CLAIMS
### Count 1 – Breach of Duties of Loyalty and Prudence
### 29 U.S.C. § 1104(a)(1)(A)–(B), (D)

58.     Plaintiff restates the above allegations as if fully set forth.

59.     Serco is a fiduciary of the Plan under 29 U.S.C. §§ 1002(21) and/or 1102(a)(1). It is responsible for selecting prudent investment options, ensuring that those options charge only reasonable fees, and taking any other necessary steps to ensure that the Plan's assets are invested prudently. Serco had a continuing duty to evaluate and monitor the Plan's investments on an ongoing basis and to "remove imprudent ones" regardless of how long a fund has been in the plan. *Tibble v. Edison,* 135 S. Ct. 1823, 1829 (2015).

60.     29 U.S.C. § 1104 imposes fiduciary duties of prudence and loyalty upon defendants in their administration of the Plan. The scope of the fiduciary duties and responsibilities of defendants include managing the assets of the Plan for the sole and exclusive benefit of Plan participants and beneficiaries, defraying reasonable expenses of administering the Plan, and acting with the care, skill, diligence, and prudence required by ERISA. These duties further required Defendant to independently assess whether each option was a prudent choice for the Plan.  *DiFelice v. U.S. Airways, Inc.,*

497 F.3d 410, 423 (4th Cir. 2007); *see Braden v. Wal-Mart Stores, Inc.*, 588 F.3d 585, 590, 595–96 (8th Cir. 2009).

**61.** Defendant was directly responsible for ensuring that the Plan's fees were reasonable, selecting investment options in a prudent fashion in the best interest of Plan participants, prudently evaluating and monitoring the Plan's investments on an ongoing basis and eliminating funds or share classes that did not serve the best interest of Plan participants, and taking all necessary steps to ensure that the Plan's assets were invested prudently and appropriately.

**62.** Defendant failed to employ a prudent and loyal process by failing to critically or objectively evaluate the cost and performance of the Plan's investments and fees in comparison to other investment options. Defendant selected and retained for years as Plan investment options mutual funds with high expenses relative to other investment options that were readily available to the Plan at all relevant times.

**63.** Defendant failed to engage in a prudent process for monitoring the Plan's investments and removing imprudent ones within a reasonable period. This resulted in the Plan continuing to offer unreasonably expensive funds and share classes compared to equivalent and/or comparable low-cost alternatives that were available to the Plan. Through these actions and omissions, Defendant failed to discharge its duties with respect to the Plan in violation of its fiduciary duty of loyalty under 29 U.S.C. § 1104(a)(1)(A).

**64.** Defendant failed to discharge its duties with respect to the Plan with the care, skill, prudence, and diligence under the circumstances then prevailing that a

prudent person acting in a like capacity and familiar with such matters would have used in the conduct of an enterprise of like character and with like aims, breaching its duties under 29 U.S.C. § 1104(a)(1)(B).

65.     Defendant is liable under 29 U.S.C. §§ 1109(a) and 1132(a)(2) to make good to the Plan the losses resulting from the breaches, to restore to the Plan any profits defendants made through the use of Plan assets, and to restore to the Plan any profits resulting from the breaches of fiduciary duties alleged in this Count. In addition, Defendant is subject to other equitable relief pursuant to 29 U.S.C. §§ 1109(a) and 1132(a)(3).

## JURY TRIAL DEMANDED

Plaintiff demands a trial by jury for all issues so triable.

**WHEREFORE**, Plaintiff, on behalf of the Plan, requests the following:

- A declaration that Defendant breached its fiduciary duties as described above;

- An order that requires Defendant make good to the Plan all losses resulting from each breach of fiduciary duty, and to otherwise restore the Plan to the position it would have occupied but for the breaches of fiduciary duty;

- An order for an accounting to determine the amounts that Defendant must make good to the Plan;

- An order removing the fiduciaries who have breached their fiduciary duties;

- An order certifying the Class and appointing the named Plaintiff as a class representative and undersigned counsel as Class Counsel;

- A declaration awarding to Plaintiff and the Class their attorneys' fees and costs under 29 U.S.C. § 1132(g)(1);

- A declaration awarding interest to the extent it is allowed by law; and

- A declaration awarding any other appropriate equitable or remedial relief.

Dated: January 28, 2020                    Respectfully submitted,

/s/ David Hilton Wise
David Hilton Wise, VA Bar No. 30828
John J. Drudi, VA Bar No. 86790
**WISE LAW FIRM, PLC**
10476 Armstrong Street
Fairfax, Virginia 22030
Tel: (703) 934-6377
Fax: (703) 934-6379
dwise@wiselaw.pro
jdrudi@wiselaw.pro

**WHITFIELD BRYSON & MASON LLP**
Scott C. Harris
Patrick M. Wallace
Scott@wbmllp.com
Pat@wbmllp.com
900 W. Morgan Street
Raleigh, North Carolina 27603
Tel : (919) 600-5000
Fax : (919) 600-5035

**GREG COLEMAN LAW**
Greg F. Coleman
Arthur Stock
Ryan P. McMillan
greg@gregcolemanlaw.com
arthur@gregcolemanlaw.com
ryan@gregcolemanlaw.com
800 South Gay Street
Suite 1100
Knoxville, TN 37929
Tel: (865) 247-0080
Fax: (865) 522-0049

**CRUEGER DICKINSON LLC**
Charles Crueger
Benjamin Kaplan
cjc@cruegerdickinson.com
bak@cruegerdickinson.com
4532 North Oakland Avenue
Whitefish Bay, WI 53211
Tel: (414) 210-3868

**JORDAN LEWIS, P.A.**
Jordan Lewis
jordan@jml-lawfirm.com
4473 N.E. 11th Avenue
Fort Lauderdale, FL 33334
Tel: (954) 616-8995
Fax: (954) 206-0374

*Attorneys for Plaintiff*